IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| STEWART WHITLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:12CV95-HEH |
| | ) |
| JOHN STREET, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(Defendants' Motions to Dismiss)

This matter is presently before the Court on multiple Motions to Dismiss filed by various Defendants in this action. The Court will address them together. Plaintiff Stuart Whitlock ("Plaintiff") has sued multiple Chesterfield County police officers, the Chesterfield County Mental Health Department ("Mental Health Department"), an employee of the Mental Health Department, and Plaintiff's estranged wife, Carolyn Whitlock. Plaintiff's Amended Complaint, filed *pro se*, alleges that Defendants deprived him of his due process right to liberty, conspired to interfere with his civil rights, and falsely imprisoned him. The matter has been fully briefed by both parties. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Motions will be granted in part and denied in part.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the allegations are as follows.

The events giving rise to Plaintiff's claims stem from a dispute between him and his neighbor Thomas Shaw ("Shaw") over a tract of land adjacent to Plaintiff's home. According to the Amended Complaint, Shaw allowed his dog to use this piece of land, which Plaintiff considered his own, as a "toilet." Ostensibly, the dispute arose out of a long-standing controversy regarding the ownership of the subject land, particularly, whether this land was subject to an easement which would permit Shaw to walk his dog on it. Plaintiff claims that he repeatedly warned Shaw not to allow the dog to trespass on his land; however, Shaw apparently disregarded Plaintiff's requests. Ultimately, their disagreement escalated into a heated verbal dispute culminating in the placement of a call to the police by Shaw's wife. (Am. Compl. at ¶¶ 14-18.)

Plaintiff claims that four marked police units arrived at the scene, and two Officers—Officer Stewart and Officer Wilkerson—questioned the parties. According to the allegations, the Officers concluded that the tract of land in dispute was subject to an easement and, consequently, open to public use. However, "[s]everal hours later, probable cause was found by Chesterfield county Magistrate's office and a warrant for trespass was issued for Thomas Shaw." (Am. Compl. at ¶ 37.) The Chesterfield County

2

Commonwealth's Attorneys ultimately entered a *nolle prosequi* on January 19, 2010 terminating the proceedings. Plaintiff indicates that he intended to pursue a civil action against Shaw, but whether he did so is unclear.

Sparking a separate, subsequent chain of events, on February 9, 2010, Officer Stewart responded to the vicinity of Plaintiff's home pursuant to an Emergency Custody Order ("ECO") obtained by Plaintiff's estranged wife. Officer Nagosky[1] then transported Whitlock to the Mental Health Department where he was evaluated by Defendant Moreno. Ultimately, no temporary detention order was issued and Plaintiff was immediately released and transported home by Officer Nagosky. (Am. Compl. ¶¶ 117-120.)

Plaintiff contends that the ECO was not served in a timely fashion and was therefore void at the time he was detained, giving rise to his § 1983 claim. (Am. Compl. at ¶¶ 91, 129-133.) He also alleges that numerous Chesterfield County Police Officers, the Mental Health Department, as well as its employees have "used force and intimidation to prevent [him] from pursuing [his] case against Tom Shaw in civil and criminal court for trespassing." (Am. Compl. at ¶ 137.)

Plaintiff has filed suit alleging violations of constitutional rights pursuant to 42 USC §§ 1983, conspiracy to violate his civil rights under §1985(2), and common law false imprisonment. He seeks declaratory relief, compensatory damages, and equitable relief. Several Defendants have filed Motions to Dismiss for failure to state a claim,

---

[1] The Amended Complaint identifies Defendant Nagosky as "Officer Mike (last name unknown)." (Am. Compl. at ¶ 97.) Defendant Nagosky concedes that references to "Officer Mike" refer to him. (Police Officers' Mem. Sup. Mot. Dismiss at 6 n.5.)

3

including with each a notice consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).[2] Defendant Carolyn Whitlock has also moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim against her. In their Motions to Dismiss, Officers Street, Stull[3], Nagosky, and Robinson[4] concede that the unlawful detention portion of Count I and false imprisonment claim alleged in Count III will need to be addressed at the summary judgment stage. All other claims are challenged by the Defendants' Motions to Dismiss and the Court will address the motions collectively.

## II. SUBJECT MATTER JURISDICTION

Defendants Carolyn Whitlock, Carpenter, Tennissen, and Watts move for dismissal of Count III for lack of subject matter jurisdiction.[5] Noting that the sole claim against her is the state law false imprisonment claim, Defendant Carolyn Whitlock argues that there is no subject matter jurisdiction. Like Plaintiff, she is a Virginia resident—thus defeating diversity. In tandem, Defendants Carpenter, Tennissen, and Watts ask the

---

[2] The only Defendants that have not filed a motion to dismiss are Bonnie Moreno, who answered the Complaint indicating that she intends to file a motion for summary judgment, and Ashley Lipscomb, who has yet to be served. The Court expresses no opinion as to the sufficiency of the allegations against these defendants.

[3] The Amended Complaint identifies an "Officer Stewart," whose married name is Stull. (Police Officers' Mem. Sup. Mot. Dismiss at 1 n.1.)

[4] Although not specifically named in the Amended Complaint, Defendant Robinson admits that he is the unknown "back up [sic] officer" who helped transport Plaintiff for mental evaluation.

[5] Defendants Carpenter, Tennissen, and Watts have not filed a separate motion to dismiss for lack of subject matter jurisdiction. However, as part of their argument for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), these Defendants have asked the Court to exercise its discretion to dismiss the pendent state law claim pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(c). The Court addresses this issue together with Defendant Carolyn Whitlock's Rule 12(b)(1) motion.

Court to refrain from exercising supplemental jurisdiction, assuming that the federal claims are dismissed against them—a correct assumption.[6] But because it determines "the Court's very power to hear the case," the Court will address doubts concerning its subject matter jurisdiction before ruling on the motions made under Rule 12(b)(6). *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

If a defendant contends that the complaint fails to allege facts establishing subject matter jurisdiction, all facts in the complaint are presumed true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219.

This Court could not exercise jurisdiction over the state law claim based on diversity alone because Defendant Carolyn Whitlock and Plaintiff are both Virginia residents. 28 U.S.C. § 1332(a)(1). But this does not end the inquiry. The Court nevertheless possesses supplemental jurisdiction over the state law claim against Defendant Carolyn Whitlock, because it is "related to" the claims over which the Court has "original jurisdiction"—the constitutional claims. 28 U.S.C. § 1367(a). Although the

---

[6] *See* discussion of motions to dismiss pursuant to Rule 12(b)(6), *infra* at Section III(D).

constitutional claims are not asserted against Defendant Carolyn Whitlock, they derive from "a common nucleus of operative fact" shared with the state law claim. *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 n.1 (4th Cir. 2007) (citing *White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993)). Namely, the two claims arise out of the allegations of an unlawful detention on February 9, 2010.

Each Defendant challenging subject matter jurisdiction argues that the Court has discretion to refrain from exercising supplemental jurisdiction. This is partially correct, but limited in application. Under 28 U.S.C. § 1367(c)(3), the Court "*may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed *all* claims over which it has original jurisdiction." (emphasis added). The discretionary nature of subsection (c)(3) is an exception to 28 U.S.C. § 1367(a), which mandates generally that "the district courts *shall* have supplemental jurisdiction" over state law claims when it has original jurisdiction over others. (emphasis added). Indeed, the Fourth Circuit has noted that supplemental jurisdiction is mandatory under § 1367(a), but becomes "permissive" only when a listed exception is triggered under § 1367(c). *Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 114-115 (4th Cir. 2001) (citations and internal quotation marks omitted).

Here, 28 U.S.C. § 1331 vests the Court with original jurisdiction over Counts I and II, both of which raise federal questions. Pursuant to § 1367(a), the Court must exercise supplemental jurisdiction unless and until one of the §1367(c) exceptions arises. The exception that Defendants rely upon to yield permissive jurisdiction applies only when "the district court has dismissed *all* claims over which it has original jurisdiction." 28

U.S.C. § 1367(c)(3) (emphasis added). But because the Court is not dismissing all federal claims, it must deny the motion to dismiss on jurisdictional grounds.

## III. FAILURE TO STATE A CLAIM

Plaintiff asserts three counts against a total of eleven Defendants, each of whom played a different role in the events leading up to this lawsuit. Counts I and II assert constitutional claims pursuant to 42 U.S.C. §§ 1983 and 1985 against all Defendants except Carolyn Whitlock—Plaintiff's wife. Count III asserts a common law false imprisonment claim against all eleven Defendants.

The Chesterfield Department of Mental Health Services moves to dismiss all claims against it, arguing that it is not an entity subject to suit. Defendant Carolyn Whitlock moves to dismiss Count III—the sole count against her—arguing that Plaintiff alleges insufficient facts to state a claim for false imprisonment. Collectively, Defendants Carpenter, Tennissen, and Watts move to dismiss all claims against them. In the same motion, Defendants Nagosky, Robinson, and Stull move to dismiss all claims against them except to the extent that Counts I or III are based upon an unlawful detention—which these Defendants concede must be addressed on summary judgment. In a separate motion, Defendant Street also moves to dismiss Count II entirely and Counts I and III except to the extent that either is based upon an unlawful detention.

### A. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). To that end, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted). And "[p]leadings must be construed to do justice." Fed. R. Civ. P. 8(d). At the same time, courts recognize that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008); *EEOC v. Concentra*

*Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Orthmann v. Apple River Campground*, 757 F.2d 909, 915 (7th Cir. 1985); and *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

## B. Chesterfield Department of Mental Health Services

Defendant Mental Health Department argues that it is not a separate entity subject to suit. The Court agrees. To determine whether a governmental entity has capacity to sue or be sued, federal courts are directed to the law of the forum state. Fed. R. Civ. P. 17(b)(3). "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." *Harrison v. Prince William County Police Dep't*, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009) (citations and internal quotation marks omitted); *see also Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir. 1984). As an established administrative department of Chesterfield County, the Mental Health Department possesses no capacity to sue or be sued.

Plaintiff cites a previous case from this Court as an example of a local government department's capacity to be sued. In *Murmer v. Chesterfield Co. Sch. Bd.*, Case No. 3:07cv608, a former school employee sued a local school board. At no time did the school board in that case raise the defense of capacity to be sued. Moreover, a school board is a "local governing board" authorized by Virginia's legislature to sue and be sued in its own name. Va. Code § 15.2-1404. The same is not true of a subdivision of a local government, such as the Chesterfield Department of Mental Health Services. Thus,

9

Plaintiff's reliance on *Murmer* does not change the analysis, and the Court will dismiss all claims against Defendant Mental Health Department.

### C. Carolyn Whitlock

The sole claim asserted against Defendant Carolyn Whitlock is a common law false imprisonment claim (Count III). However, the allegations against her are utterly deficient. At most, the Amended Complaint alleges that Carolyn Whitlock filed a false police report[7] and sought an ECO. (Am. Compl. ¶¶ 140-41.) Assuming the truth of these allegations, Plaintiff has not satisfied the requirements to plead a claim for false imprisonment under Virginia law.[8]

Virginia defines false imprisonment as "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 500 S.E.2d 215, 218 (internal quotation marks omitted) (quoting *W.T. Grant Co. v. Owens*, 141 S.E. 860, 865 (Va. 1928)). "[F]alse imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion." *Id.* (citations and internal quotation marks

---

[7] As Defendant Carolyn Whitlock notes, private citizens do not file police reports; police officers file police reports. (Def. Whitlock's Mem. Sup. Mot. Dismiss at 3.) Regardless, for purposes of resolving the motions to dismiss pursuant to the Rule 12(b)(6) standard, the Court assumes that she made some sort of false report to the police department, whatever form it took.

[8] As a federal court exercising supplemental jurisdiction over a state law claim, the Court must apply Virginia's choice of law rules. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). Because false imprisonment is a tort, Virginia applies the doctrine of *lex loci delicti*, meaning that the law of the place of the wrong governs all matters related to the claim. *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006). There is no dispute that all of the events alleged in Plaintiff's claim occurred in Virginia, so Virginia law governing false imprisonment claims controls.

omitted). A plaintiff establishes a *prima facie* case of false imprisonment when he shows that he was directly and forcibly detained—it is then the defendant's burden to establish adequate legal justification. *Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002) (citing *W.T. Grant*, 141 S.E. at 865).

Here, Plaintiff has not alleged that Defendant Carolyn Whitlock engaged in any act of physical restraint against him. Nor is there any allegation of any threat of unlawful restraint on her part. Assuming that she provided inaccurate information to the police as alleged, there is still no allegation of fact to indicate that any falsehood was intentionally conveyed to cause Plaintiff's restraint. Nor is there any indication that Plaintiff was directly and forcibly restrained by Defendant Carolyn Whitlock, either physically or by threat. *Jordan*, 500 S.E.2d at 218. Rather, it appears that after challenging Defendant Street's authority to take him into custody, Plaintiff "had no choice and left with [the officers]." (Am. Compl. at ¶ 96.) There is no allegation that Defendant Carolyn Whitlock participated further once the officers took Plaintiff into custody.

In Virginia, there is no controlling authority that would permit Plaintiff to hold another liable for false imprisonment merely because that person provided false information concerning the underlying offense. However, three Virginia Circuit Court cases have recognized that "[a] party who actively instigates, directs, or procures the unlawful arrest of a person is liable for false imprisonment." *Smith v. Button*, 43 Va. Cir. 379, 383 (1997) (citing *Winters v. Campbell*, 137 S.E.2d 188 (W. Va. 1964)). *See also Creech v. Eckerd Corp.*, 56 Va. Cir. 407, 412 (2001); *Cole v. Eckerd Corp.*, 54 Va. Cir. 269, 272 (2000). In those cases, each court also recognized that when the "defendant

11

does not participate in the resulting illegal arrest, the defendant is not liable for false imprisonment." *Smith*, 43 Va. Cir. at 383 (citing 21 A.L.R. 2d, False Arrest § 23).

Even if the Supreme Court of Virginia[9] were to adopt such a rule, Plaintiff's allegations against Defendant Carolyn Whitlock would fail. Nowhere in the Amended Complaint does Plaintiff allege that she actively participated in the arrest once she provided the allegedly false information. At most, she stood as a bystander while Defendant Street and the other officers coaxed Plaintiff into custody on the lawfully issued ECO. Accordingly, the Court will dismiss the false imprisonment claim (Count III) against Defendant Carolyn Whitlock.

### D.  Police Officer Defendants

Plaintiff asserts all three counts against each of the remaining Defendants, including Defendants Street, Carpenter, Nagosky, Robinson, Tennissen, and Watts (collectively, the "Police Officer Defendants"). These Defendants have filed overlapping motions to dismiss challenging the sufficiency of Plaintiff's allegations in different respects. Because the particular allegations against each Police Officer Defendant impacts the analysis of each count differently, the Court will address each individually,

---

[9] When determining applicable state law, if no controlling case is on point, the court must determine what rule the state supreme court "would probably follow, not fashion a rule which we, as an independent federal court, might consider best." *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184, 187 (4th Cir. 1972) (internal quotation marks omitted) (quoting *Lowe's North Wilkesboro Hdwre. v. Fidelity Mut. Life Ins. Co.*, 319 F.2d 469, 472 (4th Cir. 1963)). It is appropriate in such circumstances to consider non-binding decisions of state trial courts. *Compton v. Nationwide Mut. Ins. Co.*, 480 F. Supp. 1254, 1256 (W.D. Va. 1979) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

including a separate discussion of the allegations pertaining to each subset of Police Officer Defendants as appropriate.

### 1. Count I: Constitutional and Civil Rights Violations

Count I alleges a violation of Plaintiff's constitutional and civil rights, seeking redress under 42 U.S.C. § 1983. This claim appears to be predicated on three distinct theories: (a) an unlawful deprivation of liberty on February 9, 2010; (b) denial of access to "a valid mental petition;" and, (c) defrauding the state court by failing to submit "a valid mental petition." (Am. Compl. at ¶¶ 130, 132-33.) Except for Defendants Street, Nagosky, Robinson, and Stull, all Police Officer Defendants move to dismiss Count I in its entirety, regardless of which theory of liability is asserted. However, Defendants Street, Nagosky, Robinson, and Stull concede that Plaintiff has sufficiently alleged a viable claim in Count I to the limited extent that it derives from his alleged unlawful detention.

> Pursuant to 42 U.S.C. § 1983, the federal civil rights statute:
>
> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983; *see generally Monroe v. Pape*, 365 U.S. 167 (1961). According to the plain language of the statute, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995) (internal citations and

quotations omitted). Therefore, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights and thereby caused the alleged injury. *See Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D. Va. 1995). Additionally, "liability [under § 1983] will only lie where it is affirmatively shown that the official charged *acted personally* in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citations and internal quotation marks omitted) (emphasis added).

Regarding the alleged unlawful detention of Plaintiff, there are absolutely no allegations that Defendants Carpenter, Tennissen, or Watts had any personal involvement in executing the ECO on February 9, 2010. Indeed, it is unclear what role these specific officers may have played in the underlying events, if any. Only Defendants Street, Stull, Nagosky, and Robinson are identified as having had any involvement with Plaintiff's detention. (Am. Compl. at ¶¶ 68-119.) And because those officers actually involved in Plaintiff's detention do not move for dismissal of the unlawful detention claim, the Court expresses no opinion as to the sufficiency of those claims against them. But as to Defendants Carpenter, Tennissen, and Watts, Count I will be dismissed to the extent that it asserts an unlawful detention.

Count I will also be dismissed to the extent that it asserts a violation of Plaintiff's rights on his two additional theories. First, it is not entirely clear what Plaintiff means by a "valid mental petition." (Am. Compl. at ¶¶ 132-33.) Assuming that he is referring to the ECO secured by his wife, the validity of the ECO may be relevant to the unlawful detention and false imprisonment claims. However, the Defendants did not deny Plaintiff

14

access to this document when they allegedly detained him. Although it is unclear whether a mere denial of access to the ECO would amount to a constitutional violation, the issue is beside the point—the Amended Complaint specifically indicates that the officers actually displayed the ECO to Plaintiff.[10] Accordingly, Plaintiff has "plead[ed] himself out of court" as to this particular claim against these particular Defendants. *Atkins*, 631 F.3d at 832. Thus, the motion to dismiss Count I will be granted to the extent that it relies on an alleged denial of "access to a valid mental petition." (Am. Compl. at ¶ 132.)

Finally, Count I will be dismissed to the extent that it relies on the Police Officer Defendants' failure "to turn in a valid mental petition to the general district court." This Court can find no authority to support a constitutional claim for the officers' failure to file the ECO, particularly once Plaintiff was released and his detention terminated. Any such requirement under state law does not give rise to a federal due process claim. *See Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994) (citations omitted) ("[A] State's

---

[10] Plaintiff relies on both the Fourth and Fourteenth Amendments to establish a violation of his constitutional and civil rights. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the[] claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citations and internal quotation marks omitted). A seizure under the Fourth Amendment includes "a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 844 (citations and internal quotation marks omitted) (emphasis in original). In the Amended Complaint, Plaintiff asserts that he was intentionally taken into custody pursuant to an invalid ECO. (Am. Compl. at ¶¶ 91, 130.) Thus, to the extent that Plaintiff asserts any unlawful conduct in connection with his alleged detention, his claim arises under the Fourth Amendment as applied to the state through the Fourteenth Amendment, as opposed to a substantive due process claim under the Fourteenth Amendment.

violation of its own laws or procedural rules, creating rights beyond those guaranteed by the Constitution, cannot support a federal due process claim").

For these reasons, Count I will be dismissed to the extent that it relies on either theory that Defendants Carpenter, Tennissen, Watts, Street, Stull, Nagosky, or Robinson "denied [Plaintiff] access to a valid mental petition" or failed to file it with the state court. (Am. Compl. ¶¶ 131-32.) Moreover, Count I will be dismissed in its entirety against Defendants Carpenter, Tennissen, and Watts. Count I shall proceed against Defendants Street, Stull, Nagosky and Robinson only to the extent that it asserts an unlawful detention.

### 2. Count II: Conspiracy to Violate Constitutional and Civil Rights

Count II fails in its entirety. Apparently invoking 42 U.S.C. § 1985(2), Plaintiff alleges that Defendants "used force and intimidation to prevent [him] from pursuing [his] case against Tom Shaw in civil and criminal court for trespassing." (Am. Compl. at ¶¶ 1, 137.) He also asserts that the "[D]efendants retaliated against [him] for exercising [his] right to testify in court on January 19, 2010." (Am. Compl. at ¶ 138.) Neither allegation states a cognizable claim under § 1985(2).

Section 1985(2) prohibits two classes of conspiracies. The first type applies only to conspiracies to obstruct justice in *federal* courts. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983) (emphasis added). Because the Amended Complaint refers to interference with *state* court proceedings, the first prohibition listed in § 1985(2) cannot apply. While the second prohibition applies to state court proceedings, it does so only where there is "'class-based, invidiously discriminatory animus.'" *Hahn v. Sargent*, 523 F.2d 461, 469

16

(1st Cir. 1975) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Here, Plaintiff makes no allegations of any discriminatory animus. Because the pleadings are deficient in these respects, the Court will dismiss Count II.

### 3. Count III: False Imprisonment

Defendants Carpenter, Tennissen, and Watts rely principally on their jurisdictional argument to dismiss Count III—which this Court has already rejected, *supra* at Section II. But as an additional basis for relief, these Defendants challenge the sufficiency of the allegations of false imprisonment against them. (Police Officers' Mem. Sup. Mot. Dismiss at 11 n.12.) Specifically, they note that none of them are alleged to have had any connection with the ECO and associated detention of Plaintiff. (Am. Compl. at ¶¶ 68-128.) As noted earlier, *supra* at Section III(C), false imprisonment in Virginia requires some direct involvement of the alleged tortfeasor. *Jordan*, 500 S.E.2d at 218.

The Court's review of the pleadings confirms that no allegations implicate Defendants Carpenter, Tennissen, or Watts in Plaintiff's detention; rather, the Amended Complaint is generally devoid of any specific allegations against any of them. Thus, the Court will grant the motion to dismiss Count III against Defendants Capenter, Tennissen, and Watts.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted in part and denied in part. To the extent that Defendants challenge the Court's subject matter jurisdiction, the motions will be denied. Each of the Defendants' respective motions to dismiss for Failure to State a Claim will be granted. Counts I and III will proceed against

17

Defendants Street, Nagosky, Robinson, and Stull for alleged unlawful deprivation of liberty, as they have not moved to dismiss those claims. The case will also proceed against Defendant Moreno, who has not moved for dismissal. To date, Plaintiff has not obtained service on Defendant Lipscomb. Accordingly, the Court renders no opinion as to the sufficiency of the claims against either Defendants Moreno or Lipscomb.

                                                      /s/  
                                       Henry E. Hudson  
                                       United States District Judge

Date: Aug. 24, 2012  
Richmond, Virginia