IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| STUART WHITLOCK, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:12cv95 |
| | ) |
| JOHN STREET, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is now before the Court by consent of the parties pursuant to 28 U.S.C § 636(c)(1) on Defendants' Motion for Summary Judgment (ECF No. 53) in which Defendants Sergeant John Street, Officer Lynette Stewart-Stull, Officer Michael Nagosky[1], Officer Eric Robinson and Bonnie Moreno (collectively "County Defendants") move for summary judgment on the remaining claims. Having reviewed the pleadings filed by the parties, and concluding that oral argument on the motion would not materially aid in the decision-making process, the Courts GRANTS the motion for the reasons that follow.

I. Background

When opposing a properly asserted motion for summary judgment, the non-moving party bears the burden of offering evidence to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In doing so, both the Federal Rules of Civil Procedure and this Court's Local Rules impose the added burden of identifying such evidence with particularity. Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R.

---

[1] It has been brought to the Court's attention, pursuant to Rule 25(a), that Officer Michael Nagosky has passed away during the course of the proceedings. (Statement Noting a Party's Death (ECF No. 60)).

56(B); *Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (interpreting the 2011 amendments to Rule 56(c)). Defendants have complied with the mandates of Rule 56 by providing a list of undisputed facts. (Defs.' Mem. at 4-7.)

In opposing County Defendants' motion, Plaintiff did not separately identify the facts in dispute or cite with particularity to those portions of the record that would support the existence of a genuine dispute of material fact. Although his response to County Defendants' motion included a separately captioned section entitled "Relevant and Supportive Facts," that section contains argument and almost entirely relies upon the pleadings. Indeed, we find Plaintiff's pleading very difficult to understand. Nevertheless, the Court endeavors to construe those facts in the light most favorable to Plaintiff as the non-moving party, including consideration of those facts that he appears to dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Viewing the evidence through such a lens, the following constitutes the facts for purposes of resolving the Defendants' motions for summary judgment.

On February 9, 2010, at approximately 4:15 p.m., Magistrate April Wingfield of Chesterfield County issued an Emergency Custody Order ("ECO") for Stuart Newby Whitlock ("Plaintiff") based upon the sworn testimony of Plaintiff's wife, Carolyn Whitlock. (Defs.' Mem. in Supp. of Mot. for Summ. Judg. "Defs.' Mem." at ¶¶ 1-2 (ECF No. 55); Cocchiola Aff. at ¶3, Ex. A; Wingfield Aff. at ¶ 3, Ex. A; Carolyn Whitlock Aff. at ¶ 2. ) The ECO was facially valid. (Defs.' Mem. at ¶ 2; Wingfield Aff. at ¶¶ 3-4, Ex. A.) Local police were called to execute the ECO, and the dispatch call included information that Plaintiff could be armed, that he had previous confrontations with neighbors, that he had previous police contact and that he was a retired Richmond police officer. (Defs.' Mem at ¶¶ 3-4; Troshak Aff. at ¶ 3, Exs. B-C; Street Aff. at ¶ 4; Stull Aff. at ¶ 4; Nagosky Aff. at ¶ 4; Robinson Aff. at ¶ 4.)

Police policy dictates that when a firearm is involved in a mental health situation, numerous police officers should respond to dispatch calls. (Defs.' Mem. at ¶ 5; Street Aff. at ¶ 6; Nagosky Aff. at ¶ 6; Robinson Aff. at ¶ 6.) Before arriving at Plaintiff's house, the responding officers met in a parking lot near Plaintiff's home. (Defs.' Mem. at ¶ 5; Street Aff. at ¶ 6; Nagosky Aff. at ¶ 6; Robinson Aff. at ¶ 6.) The officers arrived at Plaintiff's home around 4:50 p.m., and Street, Stull, Robinson and Nagosky approached Plaintiff's front door. (Defs.' Mem. at ¶¶ 7-8; Street Aff. at ¶¶ 8-9; Stull Aff. at ¶¶ 8-9; Troshak Aff. at ¶ 3, Ex. A; Nagosky Aff. at ¶ 7; Robinson Aff. at ¶ 7.) When the officers knocked, Plaintiff answered the door, but refused to allow the officers to enter his house. (Defs.' ¶ at 9; Stull Aff. at ¶ 10.)

One of the responding officers showed Plaintiff the ECO and noted that it was issued in reliance on Plaintiff's wife's statements. (Defs.' at ¶ 10; Stull Aff. at ¶¶ 3, 11; Nagosky Aff. ¶¶ 3,8.) Based on the ECO, Nagosky drove Plaintiff to the Mental Health Department around 5:15 p.m. as Robinson followed in a separate vehicle. (Defs.' Mem. at ¶¶ 11-12; Nagosky Aff. at ¶ 11; Troshak Aff. at ¶ 3, Ex. A; Robinson Aff. at ¶ 11.) Upon arrival at the Mental Health Department, Defendant Moreno performed a mental health evaluation of Plaintiff and determined that a Temporary Detention Order was unnecessary. (Defs.' Mem. at ¶¶ 14-15; Moreno Aff. at ¶¶ 3, 6; Nagosky Aff. at ¶ 15.)

The mental health evaluation ended around 7:00 p.m., when Nagosky offered to drive Plaintiff back to his home. (Defs.' Mem. at ¶¶ 16-17; Moreno Aff. at ¶¶ 14, 16; Nagosky Aff. at ¶14; Troshak Aff. at ¶ 3, Ex. A.) Defendant Moreno had no contract with Plaintiff before his mental evaluation on February 9, 2012, and her only other contact with Plaintiff occurred on October 27, 2010, at a meeting regarding paperwork from his mental health evaluation. (Moreno Aff. at ¶ 8.) Defendant Moreno did not "have or act on any class-based animosity towards

3

[Plaintiff]." (Moreno Aff. at ¶ 9.) Plaintiff arrived home at approximately 7:20 p.m. on February 9, 2010. (Defs.' Mem. ¶¶ 16-18; Moreno Aff. at ¶ 3; Nagosky Aff. at ¶¶ 14, 16-17; Troshak Aff. at ¶ 3, Ex. A.)

No record exists of an ECO issued for Plaintiff on February 8, 2012. (Defs.' Mem. at ¶ 20; Cocchiola Aff. at ¶ 4; Hudson Aff. at ¶ 5.) No Defendants or other officers involved indicated that the information in the February 9, 2012 affidavit was false, that Plaintiff's wife provided false information to the Magistrate or that the ECO expired or was otherwise invalid. (Defs.' Mem. at ¶¶ 19-21; Street Aff. at ¶ 11; Stull Aff. at ¶ 12; Nagosky Aff. at ¶¶ 3, 10, 13; Robinson Aff. at ¶¶ 10, 12-13; Moreno Aff. at ¶¶ 3-9; Wingfield Aff. at ¶¶ 3-4, Ex. A; Carolyn Whitlock Aff. at ¶¶ 2-4.)

After this Court's Order ruling on various motions to dismiss (ECF No. 52), the only remaining matters for the Court to address involve Count I alleging that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights resulting in a cause of action under 42 U.S.C. § 1983 when County Defendants unlawfully detained Plaintiff and Defendant Moreno denied Plaintiff access to a valid ECO and failed to submit the ECO to the courts, Count II alleging that Defendant Moreno conspired against Plaintiff in violation of constitutional rights resulting in a cause of action under 42 U.S.C. § 1985 and Count III alleging false imprisonment against County Defendants. On these remaining counts, County Defendants move for summary judgment.

II. Standard of Review

A. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

B. Qualified Immunity

Qualified immunity protects government officials from civil lawsuits when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As such, it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* This immunity "protect[s] government's ability to perform its traditional functions," *Wyatt v. Cole*, 504 U.S. 158, 167 (1992), by "avoid[ing] 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 556 U.S. ___, ___, 132 S. Ct. 1657, 1665 (2012).

When evaluating a claim of qualified immunity, the Court must first "identify the specific right that the plaintiff asserts was infringed by the challenged conduct." *Wilson v. Layne*, 141

F.3d 111, 114 (4th Cir. 1998) (*en banc*). Once the constitutional right is defined, the determination of whether an official has qualified immunity is a two-step inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Gregg v. Ham*, 678 F.3d 333, 338-39 (4th Cir. 2012). "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. If the facts alleged do not establish that the official violated a constitutional right, then "there is no necessity for further inquiries concerning qualified immunity" and the official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Turmon v. Jordan*, 405 F.3d 202, 204-05 (4th Cir. 2005) (failure by Plaintiff to establish a constitutional violation "ends the matter and the officer is entitled to immunity") (quoting *Saucier*, 533 U.S. at 201).

"To be clearly established, a right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 556 U.S. __, __, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. __, __, 131 S. Ct. 2074, 2078 (2011)) (alterations in original). Plaintiffs can establish that the right is clearly established if they can "point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *al-Kidd*, 563 U.S. at __, 131 S. Ct. at 2086 (quoting *Wilson*, 526 U.S. at 617).

### III. Analysis

As the non-movant, Plaintiff has a duty to offer evidence establishing a triable issue and to cite to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R. 56(B); *see also Campbell*, 812 F. Supp. 2d at 759 n.5 ("The Court . . . place[s] a burden on the

parties to establish whether a fact is genuinely in dispute by reasonably identifying in the record where such fact finds support.") Plaintiff has failed to meet this burden. In fact, Plaintiff has offered no affidavit of his own or testimony of any kind. Therefore, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

### A. Constitutional Rights Violations under §1983

Plaintiff's Amended Complaint ("Am. Compl.") (ECF No. 7) essentially alleges that County Defendants executed an ECO issued, and thus expiring, on February 8, 2010 when taking Plaintiff into custody on February 9, 2010. (Am. Compl. ¶ 91, 93, 128.) Plaintiff asserts that, pursuant to 42 U.S.C. § 1983, because Defendants used an expired and invalid ECO, he was unlawfully detained in violation of his constitutional rights. (Am. Compl. at ¶¶ 91, 129-33.) Defendants argue and present evidence that the ECO was facially valid and executed within the required timeframe; therefore, no constitutional violation took place. (Defs.' Mem. at 8.)

To establish a claim under § 1983, the Plaintiff must show that Defendants acted under the color of law, violated the Plaintiff's Constitutional rights or statutory rights and caused the alleged injury. *Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D. Va. 1995). While the Fourth Amendment prohibits unreasonable searches and seizures, in cases in which police officers use a warrant, courts are clear that a valid warrant carries "a presumption of legality." *Anglin v. Director, Patuxent Institution*, 439 F.2d 1342, 1346 (4th Cir. 1971).

The Code of Virginia § 37.2 808 requires that a magistrate:

> shall issue, upon the sworn petition of any responsible person... an emergency custody order when he has probable cause to believe that any person (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening

8

harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

§ 37.2 808(A) (2010). An ECO expires if it is not executed within six hours of issuance and remains valid for up to four hours after it is executed. Va. Code § 37.2 808(J) & (K). The law requires that police officers take any person for whom an ECO been has issued into custody and that a certified person perform a mental evaluation of the person in custody to determine if hospitalization or treatment is necessary. Va. Code § 37.2 808(B) & (C).

It is undisputed that the ECO was issued on February 9, 2012, based upon the sworn statements of Plaintiff's wife. (Carolyn Whitlock Aff. at ¶ 2; Wingfield Aff. at ¶¶ 3-4, Ex. A.) It is also undisputed that the warrant was facially valid.[2] (Wingfield Aff. at ¶¶ 3-4, Ex. A.) On February 9, 2010, the Magistrate issued the ECO at 4:16 p.m., the officers arrived at Plaintiff's home to execute the ECO around 4:50 p.m. and the mental evaluation ended shortly after 7:00 p.m. (Cocchiola Aff. at ¶4; Wingfield Aff. at ¶¶ 3, Ex. A; Street Aff. at ¶ 8; Stull Aff. at ¶ 8; Moreno Aff. at ¶ 3; Nagosky Aff. at ¶ 14; Troshak Aff. at ¶ 3, Ex. A.) Plaintiff arrived back to his home by 7:20 p.m. that evening. (Nagosky Aff. at ¶¶ 14, 16-17; Troshak ¶3, Ex. A.) No evidence presented disputes that the ECO was issued upon the basis of truthful statements of Plaintiff's wife or that Defendants executed the ECO on the day issued. (Carolyn Whitlock Aff. at ¶¶ 2-4; Wingfield Aff. at ¶¶ 1-3; Cocchiola Aff. at ¶ 4.) Therefore, the valid warrant was

---

[2] Despite the validity of the ECO going undisputed, the Court notes that warrant was signed by a magistrate and that probable cause existed. Therefore, the good faith exception would apply to Defendants Street, Stull, Nagosky and Robinson with respect to executing the warrant. See *United States v. Leon*, 468 U.S. 897, 922 n. 23 (1984) (finding that the good faith exception applied to officers executing a warrant unless "a reasonably well-trained officer. . . [should] have known that the search was illegal despite the magistrate's authorization."). Therefore, even if a constitutional violation occurred, qualified immunity would bar an action against Defendants. *Reichle*, 132 S. Ct. at 2093.

executed within roughly an hour of its issuance and the detention ceased within 3 hours, well within the time required under the Code of Virginia § 37.2 808(J) & (K). Because the Court finds that the ECO was issued on February 9, 2010, was facially valid and had not expired, County Defendants did not unlawfully detain Plaintiff in violation of his constitutional rights.

With respect to the remaining allegations against Defendant Moreno, Plaintiff alleges that she violated his Fourth and Fourteenth Amendment rights by denying Plaintiff access to a valid mental petition and by failing to submit a valid mental petition to the courts. (Am. Compl. at ¶¶ 132-33.) The Court is unaware of any authority converting such actions into constitutional rights. No statutory or case law exists requiring Defendant Moreno, a mental health care professional, to grant Plaintiff "access to a valid health petition" or to turn the petition into the court, and the Court finds no authority that would find that a failure to do either constitutes a constitutional violation. As noted by in the Memorandum Opinion issued by this Court on August 24, 2012, even if Defendant violated a state law, such conduct does not violate Plaintiff's constitutional rights. (Memorandum Opinion (ECF No. 51) at 15-16) (citing *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994)).

B. <u>Conspiracy to Violate Constitutional Rights under § 1985</u>

In Count II, Plaintiff brings a claim alleging that Defendant Moreno violated his Constitutional rights pursuant to 42 U.S.C. § 1985(2) by using force and intimidation to prevent Plaintiff from pursuing a case against his neighbor and retaliating against Plaintiff for testifying at a proceeding held on January 19, 2010. (Am. Compl. ¶¶ 1, 137-38.) Section 1985(2) prohibits the interference with state court proceedings in violation of constitutional rights when

> two or more persons conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course of justice in any State, with intent to deny any citizen the equal protections of the laws or to injure him or his property for lawfully

> enforcing or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). Courts have read conspiracy to interfere with state court proceedings claims under § 1985 to require "class-based, invidiously discriminatory aminus" underlying the conspirators' actions. *Hughes v. Ranger Fuel Corp.*, 467 F.2d 6, 10 (4th Cir. 1972).

The facts are undisputed that Defendant Moreno had no contact with Plaintiff before his mental evaluation on February 9, 2012. (Moreno Aff. at ¶ 8.) Her only other contact with Plaintiff occurred during an October 27, 2010 meeting to return paperwork to him regarding his mental health evaluation. (Moreno Aff. at ¶ 8.) Lastly, Defendant Moreno did not, at any time, "have or act on any class-based animosity towards [Plaintiff]." (Moreno Aff. at ¶ 9.) Because no material facts regarding Defendant Moreno's actions toward Plaintiff are in dispute, the Court finds that Defendant Moreno did not act to intimidate Plaintiff and, therefore, the Court GRANTS Defendant Moreno's motion for summary judgment as to Count II.

### C. False Imprisonment

Plaintiff asserts a state false imprisonment claim against County Defendants, alleging that members of the police department created a "counterfeit warrant," which expired before County Defendants executed it on February 9, 2010. (Am. Compl. at ¶¶ 142-44.) Under Virginia common law, false imprisonment is defined as "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Unus v. Kane*, 565 F.3d 103, 113 (4th Cir. 2009) (quoting *Figg v. Schroeder*, 312 F. 3d 652, 637 (4th Cir. 2002) (citations omitted).

As noted above, the ECO was facially valid and has not expired when executed. Further, it is undisputed that the ECO was signed by a magistrate on February 9, 2010 based on truthful statements by Carolyn Whitlock. Plaintiff has produced no evidence indicating that his detention was without out legal justification. In fact, the County Defendant's actions were in

11

conformity with their duty under the Code of Virginia by executing the valid ECO and conducting a mental health evaluation.[3] See Figg, 312 F. 3d at 638 (granting summary judgment in favor of law enforcement defendants when their actions to detain a plaintiff were consistent with their duties under the law). Therefore, the Court GRANTS Defendant's summary judgment as to Plaintiff's claim for false imprisonment.

IV. Conclusion

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment (ECF No. 53.)

Let the Clerk file this Opinion electronically, notify all counsel accordingly and send a copy to Plaintiff's address of record.

An appropriate Order shall issue.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: December 17, 2012

---

[3] The law mandates officers "to execute the [ECO]" and to conduct an evaluation. Va. Code § 37.2 808(B) & (C).